Please do the next case, Olin Corporation v. Tester Commission, 511-0024. Counsel, please. Thank you. May it please the Court. Counsel, I'm Greg Keltner on behalf of the appellant, Olin Corporation. In this upper extremity repetitive trauma case, the issue is whether the Commission's decision regarding the accident manifestation date was against the manifest weight of the evidence. To put a little finer point on it, the Commission's decision regarding the appropriate manifestation date is premised on the belief that the manifestation date has to be the date that the petitioner was advised by his treating physician of his diagnosis and of the fact that it was work-related. I think that clearly runs contrary to the Supreme Court's holding in Durand. What does manifest itself say? When the individual knew of the connection between the injury and the employment duties. And in this particular instance, unlike some of the cases where there is a struggle with when did this occur, we don't have to worry about that because we know from the petitioner's own testimony. His testimony was that his symptoms began in May of 2008 and they progressed to the point that in August of 2008, specifically August 13th of 2008, he sought out medical treatment with Dr. Sheperson. And what did Sheperson say on that date? He said that he had, in terms of what's in the medical records, there was a diagnosis of carpal tunnel syndrome. There was a diagnosis of medial epicondylitis. The petitioner was injected with Depomedrol and he was instructed to return in six weeks. And the petitioner testified that at that time Dr. Sheperson did not tell him that his condition was work-related and didn't give him a specific diagnosis. What, is that right or wrong? Did he give him a specific diagnosis on that date? He did not give him a specific diagnosis on that date. But the court in Duran says you don't have to have a formal diagnosis for the manifestation date to occur. And in this particular instance, the claimant's testimony was, I knew that my problems were related to my job. He testified he didn't do anything outside his job that involved vigorous or repetitive hand motion. He testified that his symptoms were worse at the end of each shift than they were at the beginning of each shift. Now, if I tried to argue to you that the manifestation date was August, or I'm sorry, was May of 2008, that would be problematic in light of the holdings in Oscar Meyer and Durand as well. But in this case, we don't have to speculate about that. So what are you suggesting to manifest the date of the injury was? August the 13th, the date that he first saw medical treatment. Okay, so he goes to see Sheperson. In addition to what Justice McCulloch alluded to, according to the evidence, Sheperson advised the claimant he would not be able to identify the problem until he received the EMG results. And Sheperson's notes reflect that he thought diabetes was causing the carpal tunnel syndrome. Well, if the doctor's telling him that, why is he going to think that it's necessarily related to work? I think we have to go back to what the claimant testified to. I mean, his own testimony, we don't have equivocal testimony from the petitioner about, you know, I didn't think this was work-related, I didn't know it was work-related. That's sort of the same thing that came out in the Durand case. But in this particular case, we have clear, unquestionable testimony from the petitioner about, I knew it was work-related. And he also testified. He said he knew it was work-related, he thought it was work-related, it might have been. What exactly did he testify? He said he had, there was no doubt it was work-related. Because the question I asked him was, at some point along the line here, did you conclude that your, before you saw Dr. Sheperson, did you conclude that your condition was work-related? And he said yes. And then I asked him as a follow-up question, after that, did you ever waver from your belief that it was work-related? And he said no. So my view is that once he began this course of medical treatment, and again, the case is recognized that the manifestation date can be the date that the individual begins treatment. And interestingly enough, the cases don't say that, don't define treatment to be either the date that somebody has electrodiagnostic testing or the date that they undergo surgery. And in the appropriate case, those could certainly be the manifestation dates. But in this particular case, they're not. We know in this case that he began treatment for the exact same condition he ultimately underwent surgery for on August the 13th of 2008. And what differentiates this case from Duran and from Oscar Mayer is that, in those cases, you had individuals who had isolated episodes of treatment. In Oscar Mayer, you had one nerve conduction study done one year, another one done another year, another one done a third year. And it was kind of the same thing in Duran where the symptoms manifested and there was a two-year gap between when the petitioner told the employer that her condition was work-related and when she began getting medical treatment. This case is a different animal because in this case, you get medical treatment initially for the condition on August the 13th. The petitioner returns to, he was told to come back in six weeks. He came back on October 3rd, was seen again, was scheduled for nerve conduction testing, and it occurred on the 22nd of October. He returned to the doctor on the 30th of October, and at that point, surgery was scheduled for the 10th of November. This is a case where if you go from the first date that he received medical treatment to the time he gets released to full duty after having undergone two surgeries, you're talking about five and a half months, roughly, as opposed to the petitioners in Duran and Oscar Mayer where there was a two-year gap. And because of that, that's why those two cases don't dictate how this one has to come out because in those cases, there was concern about if we have an individual who has some problems and they basically try to live with it and continue working, we're not going to penalize them for doing that. And that makes a lot of sense. But in a situation where you have an initiation of medical treatment and a continued stream of medical treatment, and there aren't these one- or two-year gaps, and there's not this periodic treatment because I think in Oscar Mayer, the petitioner was getting B12 and some pain killers and stuff on a periodic basis, but there's no indication that that was an ongoing regular type of treatment like we have here. The commission simply missed the target on when the manifestation date was. You've characterized the claimant as being 100 percent certain and positive that his medical problems were work-related. Did he ever testify that prior to his initial visit with Sheperson on August 13, 2008, he felt his problems were related to employment but he was not sure? Did he ever testify that he was not sure? He didn't say with 100 percent certainty. I think that was the first thing that you asked me. But I don't know that that's absolutely necessary that a person be 100 percent certain. I mean, the question is when did he make the connection between the work conditions and the problems that he was having? And I think his testimony is pretty unequivocal about when he went to see Sheperson, it was clear in his mind that his problem was work-related because there wasn't anything else to blame it on. So we take his testimony over that of Dr. Sheperson? No, I think the two actually, Your Honor, are not inconsistent with each other because there's never testimony from Sheperson that the petitioner didn't know that his condition was work-related. In fact, I think the petitioner's testimony about when he made the association is entirely consistent with what Dr. Sheperson said. So I don't think that those two things are at odds. The second part of the argument, of course, is that if the accident date, the manifestation date truly was August the 13th of 2008, then was there notice provided to the respondent within the 45 days? And again, we don't have to speculate about the notice because we know that the petitioner testified that he didn't tell anybody at Olin about his upper extremity problems or that he needed surgery or that he'd been undergoing treatment until October 30th of 2008. Based on this, we would ask the Court to reverse the Commission's finding with regard to the accident manifestation date and also to find that there was no notice provided here. Any questions? Thank you. Counsel, please. May it please the Court, opposing counsel, my name is Joe Holford. I represent Mr. Kozlowski, the appellee in this case. Mr. Keltner stated just now in his argument to you, and he put it a few different times in his brief, on August 13th, 2008, Dr. Sheperson diagnosed the condition, which was treated surgically, 13 weeks later. He put in his brief, electrodiagnostic testing performed on October 22nd, 2009, confirmed the August 13th, 2008 diagnosis. That's simply not true. When Mr. Kozlowski saw Dr. Sheperson the first time on August 13th, 2008, the diagnosis clinically, without any type of diagnostic testing yet, it was right carpal tunnel. Well, the condition for which he ultimately underwent surgery was bilateral carpal tunnel and bilateral ulnar neuropathy at the elbows. Opposing counsel cites the Durand case, indicating that he believes that that case furthers his argument. In Durand, it says that courts typically set the manifestation date on either the date on which the employer requires medical treatment, or the date on which the employer can no longer perform his work activities. In this situation, we meet that obligation on both fronts. First of all, Petitioner was initially told that he needed surgery for bilateral carpal and cubital tunnel surgery on October 30th, 2008. He went immediately to his employer that day and gave them notice. Hey, I found out I've got carpal tunnel, cubital tunnel, and now I need surgery. He told them the exact same day. In addition, secondly, the date which he could no longer perform his work activities was on November 10th, 2008, which was after the date that he was informed of his diagnosis. So we meet both criteria under the Durand case. In the Freeman case, one of the issues was the determination of what the correct date was for a repetitive trauma case. In Freeman, they stated that in that case it was determined the injured employee's injury manifested itself on the date of the treating doctor's testing and diagnosis. In the case of Oscar Meyer, the court stated, and I think it's perfectly appropriate for this case, requiring notice of only a potential disability is a useless act since it is not until the employee actually becomes disabled that the employer is adversely affected in the absence of notice of accident. Respondent in this case argues that when Petitioner first sought medical treatment with Shepperson on August 13th, 2008, he should have gone to Respondent's medical department within 45 days and reported an injury. Respondent would have this court believe that Petitioner in this case should have gone to Respondent's medical department and said, hey, my right hand and my left elbow, they've been bothering me for about three months. I believe that it's related to my employment. I've been seen by a doctor. If my complaints continue, I'm going to need further testing. So I'm informing you that I might have a work-related injury which may require future medical treatment. That would be unfair to the injured employee, and that is not what the case law precedent is. Thank you. Over to Ronald. If you look at Dr. Shepperson's August 13th, 2008 note, which I attached to the brief in the appendix, it notes that when Mr. Guszewski showed up initially on August 13th, he was complaining of bilateral wrist pain. It also indicates that bilateral wrist X-rays were taken. Certainly the conclusion one can draw from that is there must have been problems in both hands, he must have complained of problems in both hands. Otherwise, why would you have noted the bilateral pain and done bilateral X-rays? Counsel argues that the burden that I want to place on the petitioner is in this case unfair. I'm not sure where the unfairness lies because this is not a situation where somebody has worked for a number of years with problems and then sought out some medical treatment. Quite simply, this is a case where somebody's got a problem, they recognize it's work-related, they get medical treatment, they've been told by the doctor to come back in six weeks, and at that point, as the cases indicate, the date they seek medical treatment can be an appropriate manifestation date. And in this case, it is the appropriate manifestation date. The commission seems to think that it's got to be the day that the doctor tells the petitioner what his diagnosis is or specifically links it to work, and that's simply incorrect. Thank you. Thank you, Counsel. The court will take the matter under advisory for disposition.